Denisse O. Gastélum, (SBN 282771)
**GASTÉLUM LAW, APC**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Christian Contreras, Esq. (SBN 330269)
  *CC@Contreras-Law.com*
Edwin S. Salguero, Esq. (SBN 344820)
  *ES@Contreras-Law.com*
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101

Attorneys for Plaintiffs,
ESTATE OF ADAM PRESTON ADAMS, et al.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF ADAM PRESTON ADAMS, by and through successor in interest, Jennifer Quintero; JENNIFER QUINTERO, individually,<br><br>            Plaintiff,<br><br>      v.<br><br>COUNTY OF SAN BERNARDINO, a public entity; SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF SHANNON D. DICUS, individually; MARCO ANTONIO LOPEZ-HERNANDEZ, an individual; and DOES 1 through 10, inclusive,<br><br>            Defendants. | **CASE NO.: 5:24-cv-1447**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>3. Deprivation of the Right to Familial Relationship with Decedent (42 USC § 1983);<br>4. Municipal Liability - Unconstitutional Policies, Customs, Practices (*Monell*, 42 U.S.C. § 1983);<br>5. Municipal Liability - Failure to Train (*Monell*, 42 U.S.C. § 1983);<br>6. Supervisory Liability (42 U.S.C. § 1983);<br>7. Negligence – Wrongful Death;<br>8. Negligence – Medical Malpractice;<br>9. Violation of California Government Code §845.6;<br>10. Violation of California Civil Code §52.1 (Tom Bane Act)<br><br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1.     This civil rights action seeks to establish the true and unequivocal facts surrounding the brutal and violent attack of ADAM PRESTON ADAMS on or about May 21, 2023, and to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.     This civil rights action further seeks to establish the violations of fundamental rights under the United States Constitution, which resulted in the attack of ADAM PRESTON ADAMS on or about May 21, 2023, an attack which resulted in ADAM PRESTON ADAMS' subsequent cruel death on May 21, 2023.

3.     At the time of the attack, ADAM PRESTON ADAMS was a fifty-six-year-old, who suffered from mental health issues, including schizophrenia, leaving him vulnerable to violent inmates. On May 21, 2023, ADAM PRESTON ADAMS, a loving father to his daughter, was brutally and repeatedly beaten in his cell by his cellmate MARCO ANTONIO LOPEZ-HERNANDEZ.



4.     Upon information and belief, MARCO ANTONIO LOPEZ-HERNANDEZ was known by the individual defendants to be aggressive and violent based on his violent history. It is believed that MARCO ANTONIO LOPEZ-HERNANDEZ was a known violent predator who preyed on the weak and the most vulnerable. Because of these traits, his mental/medical condition, and his tendency toward violence, each defendant herein knew, or should have known, that MARCO ANTONIO LOPEZ-HERNANDEZ posed an imminent threat of violence and harm to

all other inmates in his immediate vicinity.

5.     Long before the attack of ADAM PRESTON ADAMS, each of the individually named defendants from the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT (hereinafter "SBSD") and the COUNTY OF SAN BERNARDINO (hereinafter "COUNTY") knew that there existed a great indifference to the safety and protection of inmates, particularly mentally ill and vulnerable inmates at West Valley Detention Center (hereinafter "WVDC"). This indifference consisted of a total disregard by the custodial staff and mental health staff for mentally ill, vulnerable inmates who were susceptible to being preyed upon by violent predatory inmates.

6.     Despite this long history of inmate-on-inmate violence, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent predatory behavior among inmates.

7.     Therefore, by the time ADAM PRESTON ADAMS was taken into custody and housed at WVDC, violent inmates knew that they could continue to prey on the most vulnerable with no interference on the part of the custodial staff or the mental health staff.

8.     Accordingly, this civil rights action seeks to vindicate ADAM PRESTON ADAMS' violent death and egregious violation of his constitutional rights, as well as bring justice for the deprivation of Plaintiff's beloved father, ADAM PRESTON ADAMS.

## JURISDICTION AND VENUE

9.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

10.     This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

COMPLAINT FOR DAMAGES

11.     Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiff's claims occurred within this district.

12.     Plaintiffs presented their government claims on November 30, 2023. Defendant COUNTY rejected Plaintiffs' claim on January 12, 2024. Plaintiffs bring this action within six months of the tort claim rejection. Accordingly, Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

13.     With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## PARTIES

14.     Plaintiff JENNIFER QUINTERO was the natural child of ADAM PRESTON ADAMS (hereafter "ADAMS" or "DECEDENT"), and at all times relevant hereto was a resident of Riverside County, California. Plaintiff JENNIFER QUINTERO brings these claims pursuant to California Code of Civil Procedure §§ 377.20 *et seq.* and 377.60 *et seq.*, which provide for survival and wrongful death actions. Plaintiff JENNIFER QUINTERO also brings these claims individually and on behalf of decedent ADAMS on the basis of 42 U.S.C. § 1983 and § 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff JENNIFER QUINTERO also brings these claims as a Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

15.     Defendant COUNTY OF SAN BERNARDINO (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT (hereinafter also "SBSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its

employees, including SBSD employees complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through SBSD, is and was responsible for ensuring the protection and safety of all persons incarcerated at the SBSD correctional facilities and detention centers, including the WVDC.

16.     Defendant SHANNON D. DICUS (hereinafter also "SHERIFF DICUS"), at all times mentioned herein, was the Sheriff of Defendant COUNTY OF SAN BERNARDINO, the highest position in the COUNTY Jails. As Sheriff, Defendant DICUS is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant DICUS is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant DICUS also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant DICUS is being sued in his individual capacities.

17.     Defendant MARCO ANTONIO LOPEZ-HERNANDEZ was at all relevant times an inmate at the West Valley Detention Center.

18.     At all relevant times, Defendants DOES 1-10, inclusive, were individuals employed as employees/deputies with the Defendant SBSD, acting within the course and scope of that employment, under color of law.

19.     Plaintiffs are  ignorant of the true names and capacities of Defendants DOES 1 through 10 and therefore sue these Defendants by such fictitious names. Plaintiffs are  informed and believe and thereon alleges that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

///

20.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel employed by the SBSD and the COUNTY, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiff are informed, believe, and thereupon allege that each DOE defendant is a resident of California. Upon information and belief, DOES 1 through 10 were and still are residents of COUNTY OF SAN BERNARDINO, California. DOES 1 through 10 are sued in their individual capacity.

21.     At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY. They had supervisorial authority over DOES 1-10, and COUNTY employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

22.     At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the SBSD and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the SBSD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

23.     Each of the defendants, including the DOE Deputy Defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly,

or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

24.    Plaintiffs are  informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs and decedent ADAM PRESTON ADAMS' constitutional rights and other harm.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

25.    On or about May 11, 2023, ADAM PRESTON ADAMS was taken into the custody of the SAN BERNARDINO SHERRIFF'S DEPARTMENT for a non-violent misdemeanor offense and was housed in West Valley Detention Center (hereinafter "WVDC"), located at 9500 Etiwanda Ave, Rancho Cucamonga, California 91739.

26.    On or about May 21, 2023, ADAM PRESTON ADAMS was brutally attacked and beaten by his cellmate MARCO ANTONIO LOPEZ-HERNANDEZ while housed at WVDC, resulting in ADAMS's death. ADAM PRESTON ADAMS was fifty-six (56) years old at the time of his death.

27.     Upon information and belief, SBSD deputies and/or custody staff were well aware of ADAM PRESTON ADAMS' mental health conditions which created the very environment for a violent encounter to result with another inmate. Despite this knowledge, SBSD personnel failed to take adequate precautions to protect ADAM PRESTON ADAMS.

28.     Furthermore, upon information and belief, SBSD deputies and/or custody staff were aware of the propensity for the danger posed by ADAM PRESTON ADAMS' cellmate, MARCO ANTONIO LOPEZ-HERNANDEZ, and failed to properly classify his cellmate.

29.     Upon information and belief, SBSD deputies and mental health staff were aware of MARCO ANTONIO LOPEZ-HERNANDEZ's violent history, tendencies, and propensities for violence based on their interviews and evaluations of MARCO ANTONIO LOPEZ-HERNANDEZ and review of his medical and penal records. SBSD deputies and mental health staff knew or should have known that MARCO ANTONIO LOPEZ-HERNANDEZ would attack or otherwise and/or kill other inmates if MARCO ANTONIO LOPEZ-HERNANDEZ was not consistently monitored.

30.     Nevertheless, SBSD deputies and/or custody staff intentionally and improperly housed ADAM PRESTON ADAMS with this dangerous individual, thereby placing him at substantial risk of death or serious harm.

31.     By housing ADAM PRESTON ADAMS with a dangerous individual, despite ADAM PRESTON ADAMS being in custody for a non-violent misdemeanor offense, SBSD personnel showed a deliberate indifference to his safety. This indifference ultimately led to ADAM PRESTON ADAMS being brutally killed by his cellmate.

32.     Moreover, it was foreseeably dangerous to house ADAM PRESTON ADAMS with MARCO ANTONIO LOPEZ-HERNANDEZ, who upon information and belief, had a violent background. Given ADAM PRESTON ADAMS' mental

1    health history, there was a significant risk of an in-cell altercation, which could likely

2    result in ADAM PRESTON ADAMS' murder due to his cellmate's violent tendencies

3         33.    Long before the attack on ADAM PRESTON ADAMS, SBSD personnel

4    were aware that at the WVDC, there existed a great indifference to the safety and

5    protection of inmates, particularly vulnerable inmates such as ADAM PRESTON

6    ADAMS. This indifference was characterized by a total disregard for the well-being of

7    inmates who were susceptible to being preyed upon by violent, predatory inmates.

8         34.    Despite a long history of inmate-on-inmate violence, SBSD personnel

9    deliberately failed to take even modest actions to prevent predatory behavior among

10   inmates. As a result, by the time ADAM PRESTON ADAMS was taken into custody

11   and housed at WVDC, violent inmates knew they could continue to prey on the most

12   vulnerable without interference from custodial staff or medical/mental health staff.

13        35.    Defendants placed ADAM PRESTON ADAMS in a position of

14   vulnerability and danger from his cellmate because Defendants were on notice of his

15   cellmate's propensity for violence that foreseeably manifested when his cellmate

16   violently attacked ADAM PRESTON ADAMS and repeatedly beat ADAM

17   PRESTON ADAMS. Defendants failed to take any reasonable steps to mitigate the

18   obvious and well-known risk of harm, including this inmate-on-inmate violence to

19   ADAM PRESTON ADAMS, that was attendant to housing ADAM PRESTON

20   ADAMS  with a cellmate who was dangerous and prone to violence.

21        36.    Furthermore, upon information and belief, due to the COUNTY Jails

22   patterns and practices of not conducting proper and timely Title 15 welfare and safety

23   checks, ADAM PRESTON ADAMS' dire need for emergency intervention went

24   unnoticed by the WVDC staff and deputies, who were responsible for monitoring and

25   ensuring the welfare of all inmates, including ADAM PRESTON ADAMS.

26   ///

27   ///

28   ///

**COMPLAINT FOR DAMAGES**

37.     Defendants also knew that deputies routinely failed to conduct required Title 15 welfare and safety checks in WVDC and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

38.     Upon information and belief, Defendants DOES 1 through 10, including the custodial and mental health staff of SBSD's correctional facility at WVDC, their collective failure to conduct the required safety check of Decedent ADAM PRESTON ADAMS' housing unit on the date of the violent attack, evidences deliberate indifference to the risk of harm to ADAM PRESTON ADAMS.

39.     By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide ADAM PRESTON ADAMS with safety and proper housing, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide proper Title 15 welfare and safety checks, along with emergency medical care and life-saving care to persons in their custody, constituted deliberate indifference to ADAM PRESTON ADAMS' serious medical needs, health, and safety.

40.     DOES 1 through 10, which included custodial and mental health staff of WVDC, acted with deliberate indifference and reckless disregard to the safety, security, protection and constitutional and statutory rights of Decedent and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things:

   a.    Selecting, retaining and assigning deputies to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates who exhibit vulnerabilities due to medical, mental health, and disabilities;

   b.    Subjecting persons in their jails to violence perpetrated by other detainees, arrestees or inmates;

**COMPLAINT FOR DAMAGES**

c.   Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following: separation of detainees and arrestees from potentially violent or dangerous inmates; use of security cameras to monitor violence within jail cells; training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence; monitoring drunken detainees who are unable to care for themselves.

d.   Failing to adequately train, supervise, and control deputies in the arts of law enforcement;

e.   Failing to adequately discipline deputies involved in misconduct; and

f.   Condoning and encouraging deputies in the belief that they can violate the rights of persons such as the Plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

41.   Defendant DOES 1 through 10, which included custodial and mental health staff of WVDC acted with deliberate indifference and reckless disregard toward ADAM PRESTON ADAMS' right to be protected and safe while housed at the WVDC, and afforded due process of law, by among other things, the following acts:

a.   Placing ADAM PRESTON ADAMS, a vulnerable detainee with mental health concerns, in a cell with an inmate and/or arrestees whom Defendants knew or should have known had propensities for aggressive acts or acts of violence and mental instabilities, and not watching and protecting him;

b.   Failing to properly classify and house his cellmate as a violent inmate or otherwise house and classify his cellmate in appropriate housing where he could be constantly monitored and/or isolated from other inmates;

c.   Placing ADAM PRESTON ADAMS, a vulnerable detainee with mental health concerns, in a cell with other detainees, arrestees and inmates under

circumstances that were conducive to the eruption of violence, including in a unit with other violent and dangerous inmates such as the one housed with ADAM PRESTON ADAMS;

d. Causing ADAM PRESTON ADAMS, to remain in the cell with another inmate after Defendants knew that physical violence was imminent; and

e. Not observing or protecting ADAM PRESTON ADAMS, or otherwise standing by and allowing a brutal beating on ADAM PRESTON ADAMS by another inmate to continue for an unreasonable period of time, resulting in unnecessary and severe critical injuries to ADAM PRESTON ADAMS that eventually caused his death on May 21, 2023.

42. Plaintiff are informed and believe that Defendants DOES 1 through 10 were aware of the threat by his cellmate represented to ADAM PRESTON ADAMS, based on the inmate's criminal history or exhibited violent tendencies of which the deputies and other employees knew or should have known. Said defendants intentionally, recklessly and with deliberate indifference, failed to take any security measures to protect detainees and arrestees of minor offenses who were unable to defend themselves, such as ADAM PRESTON ADAMS, who was unable to care for himself or others from inmates with violent tendencies like those exhibited by his cellmate, MARCO ANTONIO LOPEZ-HERNANDEZ.

43. Plaintiff are informed and believe and thereupon allege, that defendants COUNTY and SBSD ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices and customs set forth in the preceding paragraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations, based either on a deliberate plan by defendants, or on defendants' deliberate indifference or reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff.

44. Plaintiff are informed and believe and thereupon allege that the brutal beating on ADAM PRESTON ADAMS was conducted with the approval of SBSD

deputies or because of the deliberate indifference or reckless disregard of Deputy Defendants, and DOES 1 through 10 to the safety and security of ADAM PRESTON ADAMS.

45. Plaintiff are informed and believe and thereupon allege that the Deputy Defendants and DOES 1 through 10, recklessly and with deliberate indifference, failed to immediately and appropriately respond to the brutal attack, and allowed the attack to continue for an extended period of time causing ADAM PRESTON ADAMS to suffer numerous and severe injuries, resulting in his death.

46. Plaintiff are informed and believe that SBSD deputies, intentionally, recklessly and with deliberate indifference, failed to take immediate action to summon medical care for ADAM PRESTON ADAMS, despite knowing he was in need of immediate medical care.

47. Defendants have been on notice for years that their provision of medical and mental health treatment to inmates is inadequate and results in needless harm and death.

48. Welfare and safety checks by custody and mental health staff, when done correctly, are an important part of protecting inmates in the SBSD's jails from harm, including inmate on inmate violence. Defendants knew that health and welfare checks conducted in units were part of violence prevention programs and that such checks were necessary for inmate-on-inmate attack prevention.

49. Prior to the attack of ADAM PRESTON ADAMS, Defendants were aware that there was a problem with custody staff failing to actually perform required welfare and safety checks in the units at SBSD jails, failing to perform adequate welfare and safety checks and/or failing to take adequate measures after observing violence during the welfare and safety checks.

50. Defendants actions and omissions, as herein above recited, directly placed ADAM PRESTON ADAMS at substantial risk of the grievous and tragic harm that ultimately occurred.

**COMPLAINT FOR DAMAGES**

51.     Defendants COUNTY OF SAN BERNARDINO and the SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT custodial and medical personnel assigned to its correctional facilities have a responsibility to ensure that the COUNTY correctional facilities are safe and that the constitutional rights of detainees such as ADAM PRESTON ADAMS are not violated. The COUNTY OF SAN BERNARDINO, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT and SHERIFF SHANNON D. DICUS have failed to ensure detainees do not get assaulted in their jails and have failed to protect the civil rights and constitutional rights of detainees within the COUNTY and SBSD jails. Accordingly, this claim and the subsequent lawsuit will seek judicial intervention to ensure further constitutional violations and jail assaults do not occur.

**FIRST CLAIM FOR RELIEF**

**Failure to Protect from Harm**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(By Plaintiff ESTATE OF ADAM PRESTON ADAMS As Against Defendants DOES 1 through 10)**

52.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

53.     Pretrial detainees such as ADAM PRESTON ADAMS have a Fourteenth Amendment due process right to be free from harm. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

54.     Upon information and belief, on or around May 11, 2023, when Defendants DOES 1 through 10, and each of them were processing and classifying ADAM PRESTON ADAMS, Defendants DOES 1 through 10 made the intentional decision to place ADAM PRESTON ADAMS in a condition of confinement which significantly exposed him to the risk of harm which ultimately caused ADAM PRESTON ADAMS' death.

55. Given ADAM PRESTON ADAMS' documented mental health problems, inmates such as ADAM PRESTON ADAMS are more susceptible to violence. Individuals with mental health problems are more susceptible to violence from other inmates based upon manifestations from their mental health problems. The risk to harm to inmates such as ADAM PRESTON ADAMS are even greater when they are in confinement with other inmates who have a propensity for violence.

56. Indeed, upon information and belief, on or about May 21, 2023, Defendants DOES 1 through 10, and each of them continued to make the intentional decision to place ADAM PRESTON ADAMS in housing with his cellmate, who had a known history of attacking other inmates and had a history of violent propensities. Indeed, Defendants DOES 1 through 10, and each of them, made the intentional decision to recklessly mix dangerous inmates/detainees with pretrial detainees such as ADAM PRESTON ADAMS.

57. Upon information and belief, foreseeably, ADAM PRESTON ADAMS was attacked by his cellmate in his cell on or about May 21, 2023. This attack caused ADAM PRESTON ADAMS to suffer severe and critical injuries, ultimately causing his death.

58. Upon information and belief, Defendants DOES 1 through 10 knew that MARCO ANTONIO LOPEZ-HERNANDEZ had a propensity for violence and posed a danger to other inmates/detainees because, upon information and belief, MARCO ANTONIO LOPEZ-HERNANDEZ had a documented history of attacking other inmates, of which Defendants DOES 1 through 10 were aware of by reviewing incident reports related to his MARCO ANTONIO LOPEZ-HERNANDEZ's history of violence towards other inmates and detainees.

59. Nonetheless, despite having express and actual knowledge about the deadly risks that ADAM PRESTON ADAMS faced, given that he was being housed with a violent inmate, Defendants DOES 1 through 10 acted with deliberate indifference when they callously made the intentional decision of placing ADAM

PRESTON ADAMS in the same cell with MARCO ANTONIO LOPEZ-HERNANDEZ.

60.  Defendants DOES 1 through 10 acted with deliberated indifference because they made the conscious choice of housing ADAM PRESTON ADAMS with a violent person and consciously disregarded the foreseeable consequence of such action, which was death or serious bodily injury to ADAM PRESTON ADAMS.

61.  Clearly, given that, upon information and belief, his cellmate had a known history of violence towards other inmates and detainees. Placing ADAM PRESTON ADAMS in this cell with the hazards of his cellmate's violent acts put ADAM PRESTON ADAMS at substantial risk of suffering serious harm to which Defendants DOES 1 through 10, and each of them, did not take reasonable measures to reduce such risk even though any reasonable person would have appreciated the high risks involved in the situation, knowing of his cellmate's documented history of attacking other inmates and detainees.

62.  In fact, Defendants DOES 1 through 10, and each of them, could have very easily placed ADAM PRESTON ADAMS in a different cell, module, or facility to reduce or abate the risks ADAM PRESTON ADAMS faced by being housed with a violent inmate like his cellmate.

63.  By failing to take such reasonable measures, it was obvious and foreseeable that ADAM PRESTON ADAMS would get assaulted by his cellmate.

64.  Furthermore, Defendants DOES 1 through 10, and each of them also placed ADAM PRESTON ADAMS in a condition wherein ADAM PRESTON ADAMS could face a tortious death at the hands of violent inmates. Defendants DOES 1 through 10, and each of them were aware that ADAM PRESTON ADAMS was being housed with a violent inmate with a history of attacking other inmates. Therefore, ADAM PRESTON ADAMS was in a vulnerable state and was placed in a condition where he could be harmed by his cellmate, including being violently attacked and repeatedly beaten, which resulted in death.

65.    Clearly, such conditions put ADAM PRESTON ADAMS at substantial risk of suffering serious harm. Despite having clear knowledge regarding the substantial risks that ADAM PRESTON ADAMS faced by being housed with his cellmate, Defendants DOES 1 through 10, and each of them did not take any reasonably available measures to abate or reduce the risks ADAM PRESTON ADAMS faced even though a reasonable person in the circumstances would have appreciated the high degree of risk involved.

66.    Therefore, Defendants DOES 1 through 10's conduct caused the obvious consequence that ADAM PRESTON ADAMS would face death or serious bodily injury. Accordingly, by not taking such measures, Defendants DOES 1 through 10 caused ADAM PRESTON ADAMS' death.

67.    Defendants subjected ADAM PRESTON ADAMS to their wrongful conduct, depriving ADAM PRESTON ADAMS of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of ADAM PRESTON ADAMS and others would be violated by their acts and/or omissions.

68.    As a direct and proximate result of Defendants DOES 1-10' acts and/or omissions as set forth above, ADAM PRESTON ADAMS, sustained injuries and damages.

69.    The conduct of Defendants DOES 1-10 entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants SBSD and COUNTY.

70.    Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

///

///

///

///

**SECOND CLAIM FOR RELIEF**

**Failure to Provide Medical Care**

**(Violation of the Fourteenth Amendment to the United States Constitution**

**By Plaintiff ESTATE OF ADAM PRESTON ADAMS As Against Defendant**

**DOES 1 through 10)**

71.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

72.     Pretrial detainees such as ADAM PRESTON ADAMS have a Fourteenth Amendment due process right to needed medical care. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange,* 888 F.3d 1118, 1124–25 (9th Cir. 2018).

73.     By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated ADAM PRESTON ADAMS' Fourteenth Amendment rights, by depriving Decedent ADAM PRESTON ADAMS, of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendment to the United States Constitution: ADAM PRESTON ADAMS' right to be free from deliberate indifference to ADAM PRESTON ADAMS' serious medical and mental health needs while in custody as a pretrial detainee as secured by the Fourteenth Amendment.

74.     By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide ADAM PRESTON ADAMS with appropriate medical care based upon ADAM PRESTON ADAMS' need for mental health treatment. ADAM PRESTON ADAMS desperately needed medical treatment because the symptoms from his mental health problems were severely manifesting such that it put him at risk. ADAM PRESTON ADAMS continued to deteriorate the longer he was in SBSD custody. Yet, despite ADAM PRESTON ADAMS' mental health condition deteriorating and being at a severely weakened state, Defendants DOES 1 through 10 failed to take reasonable

available measures to abate or reduce the risk of serious harm, even though a reasonable person under the circumstances would have understood the high degree of risk involved—making the consequences of the Defendants DOES 1 through 10's conduct obvious.

75.    Clearly, given that ADAM PRESTON ADAMS  life was in danger and at risk, Defendants DOES 1 through 10, and each of them, did not take reasonable measures to reduce such risk even though any reasonable person would have appreciated the high risks involved in the situation. By failing to take such reasonable measures, it was obvious and foreseeable that ADAM PRESTON ADAMS could die from his injuries if not provided medical care for his mental health condition. Therefore, by not taking such measures, Defendants DOES 1 through 10, and each of them, caused ADAM PRESTON ADAMS' death.

76.    As a direct and proximate result of Defendants' conduct, the civil rights of ADAM PRESTON ADAMS, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, Decedent ADAM PRESTON ADAMS experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

77.    Defendants subjected ADAM PRESTON ADAMS to their wrongful conduct, depriving ADAM PRESTON ADAMS of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of ADAM PRESTON ADAMS and others would be violated by their acts and/or omissions.

78.    As a direct and proximate result of Defendants DOES 1-10's acts and/or omissions as set forth above, ADAM PRESTON ADAMS, sustained injuries and damages.

79.    The conduct of Defendants DOES 1-10 entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff do not seek punitive damages against Defendants COUNTY and SBSD.

80.     Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

### THIRD CLAIM FOR RELIEF

**Deprivation of the Right to Familial Relationship with Decedent**

**(42 U.S.C. § 1983)**

**(By Plaintiff JENNIFER QUIENTERO, against Defendants DOES 1 through 10)**

81.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

82.     The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to Decedent ADAM PRESTON ADAMS' protection, safety, and serious medical and mental health needs, violating Decedent ADAM PRESTON ADAMS' constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of ADAM PRESTON ADAMS and deprived Plaintiff JENNIFER QUINTERO of her liberty interests in the familial relationship in violation of her substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

83.     All of the acts of Defendants DOES 1 through 10, and the persons involved were done under color of state law.

84.     The acts and omissions of each Defendants deprived Plaintiff JENNIFER QUINTERO of rights, privileges and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiff of their rights to a familial relationship with Decedent ADAM PRESTON ADAMS without due process of law by their deliberate indifference in denying ADAM PRESTON ADAMS protection and safety while incarcerated at the WVDC with an inmate known for propensity of violence towards other inmates and detainees.

85.     Defendants DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of COUNTY and SBSD. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

86.     In addition, the training policies of the COUNTY and SBSD were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY custody, medical and mental health staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that its custody, medical and mental health staff would engage in conduct that would deprive persons such as Decedent ADAM PRESTON ADAMS, and thus Plaintiff of her rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

87.     Defendants COUNTY and SBSD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiff JENNIFER QUINTERO, and Decedent ADAM PRESTON ADAMS, by each individual Defendant's official policies and/or longstanding practices or customs that are so closely related to ADAM PRESTON ADAMS' injuries and death, and thus to the deprivation of the rights of Plaintiff as to be the moving force causing those injuries.

88.     Defendant SHERIFF SHANNON D. DICUS, a final policymaker for the COUNTY and SBSD, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody, medical and mental health staff at the COUNTY Jails, including WVDC, in that he had knowledge of and made a deliberate choice to

approve their unlawful acts and omissions.

89.     As a direct and proximate result of Defendants' conduct, the civil rights of ADAM PRESTON ADAMS, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, Decedent ADAM PRESTON ADAMS experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

90.     Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

91.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff sustained injuries and damages.

92.     The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff do not seek punitive damages against Defendants COUNTY.

93.     Plaintiff are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability - Unconstitutional Policies, Customs, and Practices

### (*Monell* - 42 U.S.C. § 1983)

### (By Plaintiff ESTATE OF ADAM PRESTON ADAMS As Against Defendants COUNTY OF SAN BERNARDINO and SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT)

94.     Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

95.     At all times relevant hereto, the COUNTY and SBSD custody, medical and mental health staff were required to adhere to and enforce the following policies and procedures:

a.  To deny pretrial detainees and other inmates safety and protection by mixing non-violent pretrial detainees with violent inmates.

b.  To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

c.  To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of County of San Bernardino's written policies and state law;

d.  To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

e.  To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

f.  To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

g.  To fail to train custody staff that medical staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

h.  To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

**COMPLAINT FOR DAMAGES**

i.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

j.    To cover up violations of constitutional rights by any or all of the following:

    i.    By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

    ii.    By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

    iii.    By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into County of San Bernardino jails; and

    iv.    By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

k.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, SBSD personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the SBSD or medical staff does not provide adverse information against a fellow officer, or member of the SBSD or the medical staff;

l.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the

24

rights and safety of pretrial detainees, such as ADAM PRESTON ADAMS, and in the face of an obvious need for such policies, procedures, and training programs.

96.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and SBSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the SBSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and SBSD, including Defendant SHERIFF DICUS:

a.   To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b.   To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

c.   To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

d.   To cover up violations of constitutional rights by any or all of the following:

   i.   By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

   ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

   iii.   By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of

unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.   To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the COUNTY jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as ADAM PRESTON ADAMS, and in the face of an obvious need for such policies, procedures, and training programs.

97.   Defendant supervisors had knowledge of in adequacy of Supervision and deliberate indifference towards inmates' rights to be protected from harm at the County of San Bernardino's jails and failed to take corrective action.

98.   Prior to ADAM PRESTON ADAMS death, high-level COUNTY supervisors, including and SHERIFF DICUS, knew or should have known of a history of years of notice of ongoing failure to routinely check in on inmates, knew or should have known of inadequate and/or incompetent staffing, insufficient and inadequate training/supervision/control, the hiring of deputies in jails who exhibit deliberate indifference & reckless disregard to the safety of other inmates, subjection of violence in jails perpetrated by other inmates, and failure to take corrective measures, including separation of detainees from potentially violent or dangerous inmates, use of security cameras to monitor violence within jail cells, training deputies to monitor detainees

26

**COMPLAINT FOR DAMAGES**

and inmates and immediately respond to it, and failing to adequately control and discipline deputies involved in misconduct. The number of lawsuits against the COUNTY and throughout the state and the evidence available from those actions is troubling and demonstrative of Defendants' years of deliberate indifference to protective detainees from and inmates from unnecessary harm and their failure to take corrective action.

99. As a preamble, between 2018 and 2023, the COUNTY had notice of a slew of cases revealing constitutional violations of inmates' rights to be protected from harm. Due diligence would have revealed these breaches of constitutional mandates:

100. In 2023, Defendant SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails resulted in twenty-six (26) in-custody deaths.

101. The Defendants' deliberate indifference towards pretrial detainees subject to inmate violence due to the above-referenced polices, customs and practices resulted in several inmate-on-inmate deaths since 2018. From June 2018 through March 2023, six (6) inmates have died due to inmate-on-inmate violence within the COUNTY jails:

    i.    In 2023, a woman, age 35, died of an inmate on intimate violence.

    ii.    In 2021, a male, age 58, died of an inmate on intimate violence.

    iii.    In 2021, a male, age 39, died of an inmate on intimate violence.

    iv.    In 2020, a male, age 58, died of an inmate on intimate violence.

    v.    In 2019, a male, age 62, died of an inmate on intimate violence.

    vi.    In 2018, a male, age 25, died of inmate on intimate violence.

102. As demonstrated by the twenty-six (26) in-custody deaths in 2023, and the six (6) inmates which died by due to inmate-on-inmate violence within the COUNTY jails, it is more than evident that the policies, customs and practices referenced above were widespread and longstanding within the COUNTY and SBSD.

103. Defendants COUNTY and SBSD, through their employees and agents, and through their policy-making supervisors, SHERIFF DICUS and DOES 1 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and

1  discipline Defendants DOES 1 through 10, and other COUNTY and SBSD personnel,

2  with deliberate indifference to the constitutional rights of ADAM PRESTON ADAMS,

3  and others in similar positions, as described above, and therefore, those rights thereby

4  violated.

5  104.  The unconstitutional actions and/or omissions of Defendants DOES 1

6  through 10, and other SBSD custody and medical staff, as described above, were

7  approved, tolerated, and/or ratified by policymaking officers for the COUNTY and

8  SBSD, including Defendants SHERIFF DICUS and DOES 1 through 10. Plaintiff are

9  informed and believe and thereon allege that the details of this incident have been

10  revealed to the authorized policymakers within the COUNTY and SBSD, and that such

11  policymakers have direct knowledge of the fact that the death of ADAM PRESTON

12  ADAMS was the result of deliberate indifference to his rights to be protected and safe

13  while in the custody of the COUNTY/SBSD, and his rights to have access to medical

14  care when suffering a medical emergency. Notwithstanding this knowledge, the

15  authorized policymakers within the COUNTY and SBSD have approved of the conduct

16  and decisions of Defendants DOES 1 through 10 in this matter, and have made a

17  deliberate choice to endorse such conduct and decisions, and the basis for them, that

18  resulted in the death of ADAM PRESTON ADAMS By so doing, the authorized

19  policymakers within the COUNTY and SBSD have shown affirmative agreement with

20  the individual Defendants' actions and have ratified the unconstitutional acts of the

21  individual Defendants. Furthermore, Plaintiff are informed and believe, and thereupon

22  allege, that Defendants SHERIFF DICUS and DOES 1 through 10, and other policy-

23  making officers for the COUNTY and SBSD were and are aware of a pattern of

24  misconduct and injury caused by COUNTY Jails custody and medical staff similar to

25  the conduct of Defendants described herein, but failed to discipline culpable custody

26  and medical staff and failed to institute new procedures and policy within the

27  COUNTY and SBSD.

28

105.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and SBSD were a moving force and/or a proximate cause of the deprivations of ADAM PRESTON ADAMS' clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected ADAM PRESTON ADAMS to their wrongful conduct, depriving ADAM PRESTON ADAMS of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of  ADAM PRESTON ADAMS and others would be violated by their acts and/or omissions.

106.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and SBSD, as described above, ADAM PRESTON ADAMS suffered serious injuries, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and SBSD.

107.  As a direct and proximate result of Defendants DOES 1-10's acts and/or omissions as set forth above, ADAM PRESTON ADAMS, sustained injuries and damages.

108.  Plaintiff are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## **FIFTH CLAIM FOR RELIEF**

### **Municipal Liability - Failure to Train**

### **(42 U.S.C. § 1983)**

### **(By Plaintiff ESTATE OF ADAM PRESTON ADAMS As Against Defendants COUNTY OF SAN BERNARDINO and SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT)**

109.   Plaintiffs reallege and incorporate herein by reference each of the

**COMPLAINT FOR DAMAGES**

preceding paragraphs of this complaint, and any subsequent paragraphs.

110. "[T]he inadequacy of police training may serve as the basis for § 1983 liability inly when the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

111. Plaintiff THE ESTATE OF ADAM PRESTON ADAMS claims that the death of ADAM PRESTON ADAMS was a result of the Defendants COUNTY OF SAN BERNARDINO and SBSD's failure to train their employees.

112. At all relevant times, the individual defendants, were acting in the course of his employment with the Defendants COUNTY and SBSD under color of law. The actions and omissions of the individual employees, inclusive deprived ADAM PRESTON ADAMS of particular rights guaranteed under the laws and Constitutions of the United States and California, as set forth in the relevant, earlier claims for relief.

113. Defendants COUNTY'S and SBSD's training of the individual defendants did not adequately instill the necessary discipline, restraint, and respect for civil rights required of enforcement personnel, especially in light of the Defendants COUNTY and SBSD's decision to continue to employ the individual defendants despite their incompetence.

114. Indeed, on and for some time prior to May 21, 2023  (and continuing to the present date), Defendants COUNTY and SBSD acting with deliberate indifference to the rights and liberties of the public in general, and of ADAM PRESTON ADAMS, and of persons in his class, situation and comparable position in particular, failed to train their employees in the following regard:

a. To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b. To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

c. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

d. To cover up violations of constitutional rights by any or all of the following:

   i. By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

   ii. By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

   iii. By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f. To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the COUNTY jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the

31

rights and safety of pretrial detainees, such as ADAM PRESTON ADAMS, and in the face of an obvious need for such policies, procedures, and training programs.

115.   This failure of Defendants COUNTY and SBSD to provide adequate training caused the variously alleged deprivations of ADAM PRESTON ADAMS' rights by the individual defendants; that is, the COUNTY and SBSD's failure to train is so closely related to the deprivation of ADAM PRESTON ADAMS' rights as to be the moving force that caused his ultimate injuries.

116.   Clearly, Defendants COUNTY and SBSD, were deliberately indifferent to the obvious consequences of its failure to train its deputies and employees adequately.

117.   Indeed, COUNTY and SBSD failed to trained its deputies and employees to such an unconstitutional degree that it resulted in a significant number of deaths based upon COUNTY and SBSD lacking the necessary training. Between 2018 and 2023, the COUNTY had reflected the lack of training.

118.   In 2023, Defendant SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails resulted in twenty-six (26) in-custody deaths.

119.   The Defendants' deliberate indifference towards pretrial detainees subject to inmate violence due to the above-referenced polices, customs and practices resulted in several inmate-on-inmate deaths since 2018. From June 2018 through March 2023, six (6) inmates have died by due to inmate-on-inmate violence within the COUNTY jails.

120.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and SBSD were a moving force and/or a proximate cause of the deprivations of ADAM PRESTON ADAMS' clearly established and well-settled constitutional rights in violation of 42 U.S.C. §

1983. Defendants subjected ADAM PRESTON ADAMS to their wrongful conduct, depriving ADAM PRESTON ADAMS of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of  ADAM PRESTON ADAMS and others would be violated by their acts and/or omissions.

121.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and SBSD, as described above, ADAM PRESTON ADAMS suffered serious injuries, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and SBSD.

122.  As a direct and proximate result of Defendants DOES 1-10's acts and/or omissions as set forth above, ADAM PRESTON ADAMS, sustained injuries and damages.

123.  Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## SIXTH CLAIM FOR RELIEF

**Supervisory Liability Causing Constitutional Violations,**

**(42 U.S.C. § 1983)**

**(By Plaintiff ESTATE OF ADAM PRESTON ADAMS As Against Defendants SHERIFF DICUS, and DOES 1 through 10)**

124.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

125.   At all material times, SHERIFF DICUS and DOES 1 through 10 had the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and SBSD.

///

**COMPLAINT FOR DAMAGES**

126.   Defendants SHERIFF DICUS, and DOES 1 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY and SBSD personnel, with deliberate indifference to ADAM PRESTON ADAMS' and others' constitutional rights, which were thereby violated as described above.

127.   As supervisors, Defendants SHERIFF DICUS, and DOES 1 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protection while incarcerated at WVDC and the rights to the serious medical and mental health needs of ADAM PRESTON ADAMS. Supervising Defendants either directed his or her subordinates in conduct that violated Decedent's and Plaintiff' rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive  ADAM PRESTON ADAMS of rights, or knew his or her subordinates were engaging in acts likely to deprive ADAM PRESTON ADAMS of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate ADAM PRESTON ADAMS' rights, and in fact did cause the violation of  ADAM PRESTON ADAMS' rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable for their failures to intervene in their subordinates' apparent violations of ADAM PRESTON ADAMS' rights.

128.   The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and SBSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and SBSD, including Defendants SHERIFF DICUS, and DOE DEPUTIES 1 through 10,

1  respectively, with deliberate indifference to ADAM PRESTON ADAMS' and others'

2  constitutional rights, which were thereby violated as described above.

3      129.   The unconstitutional actions and/or omissions of Defendants DOES 1

4  through 10, and other COUNTY and SBSD personnel, as described above, were

5  approved, tolerated, and/or ratified by policymaking officers for the COUNTY and

6  SBSD, including Defendants SHERIFF DICUS, and DOES1 through 10.

7      130.   Plaintiff is informed and believes and thereon alleges that the details of

8  this incident have been revealed to Defendants SHERIFF DICUS, and DOES 1 through

9  10 through their review of incident reports and video footage of housing units following

10  the death of a detainee or inmate and that such Defendant-policymakers have direct

11  knowledge of the fact that the brutal attack by his cellmate on ADAM PRESTON

12  ADAMS was not justified, necessary, and preventable because and DOES 1 through

13  10 were on notice of his cellmate's predatory behavior towards other inmates and

14  detainees and his documented history of violence towards other inmates and detainees,

15  and thus represents deliberate indifference to ADAM PRESTON ADAMS rights to be

16  protected and safe while in the COUNTY's custody. Notwithstanding this knowledge,

17  on information and belief, Defendants SHERIFF DICUS and DOES 1 through 10 have

18  approved and ratified the conduct and decisions of Defendants DOES 1 through 10 in

19  this matter, and have made a deliberate choice to endorse such conduct and decisions,

20  and the basis for them, that resulted in the harm that ADAM PRESTON ADAMS has

21  suffered. By so doing, Defendants SHERIFF DICUS and DOES 1 through 10 have

22  shown affirmative agreement with the individual Defendants' actions and have ratified

23  the unconstitutional acts of the individual Defendants.

24      131.   Furthermore, Plaintiff are informed and believe, and thereupon allege, that

25  Defendants SHERIFF  DICUS, and DOES 1 through 10 and other policymaking

26  officers for the COUNTY and SBSD were and are aware of a pattern of misconduct

27  and injury, and a code of silence, caused by COUNTY and SBSD custody, medical and

28  mental health staff personnel similar to the conduct of Defendants described herein,

**COMPLAINT FOR DAMAGES**

1    but failed to discipline culpable law enforcement officers and employees and failed to

2    institute new procedures and policy within the COUNTY and SBSD.

3      132. The aforementioned customs, policies, practices, and procedures; the

4    failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate,

5    investigate, and discipline; and the unconstitutional orders, approvals, ratification, and

6    toleration of wrongful conduct of Defendants SHERIFF DICUS, and DOES 1 through

7    10 were a moving force and/or a proximate cause of the deprivations of  ADAM

8    PRESTON ADAMS' clearly established and well-settled constitutional rights in

9    violation of 42 U.S.C. § 1983, as more fully set forth above.

10     133. Defendants subjected ADAM PRESTON ADAMS to their wrongful

11   conduct, depriving ADAM PRESTON ADAMS of rights described herein, knowingly,

12   maliciously, and with conscious and reckless disregard for whether the rights and safety

13   of ADAM PRESTON ADAMS and others would be violated by their acts and/or

14   omissions.

15     134. As a direct and proximate result of the unconstitutional actions, omissions,

16   customs, policies, practices, and procedures of Defendants SHERIFF DICUS, and

17   DOES 1 through 10 as described above, Decedent lost his life and Plaintiff are entitled

18   to damages, penalties, costs, and attorneys' fees.

19            **<u>SEVENTH CLAIM FOR RELIEF</u>**

20             **Negligence – Wrongful Death**

21      **(Plaintiff JENNIFER QUIENTERO As Against All Defendants)**

22     135. Plaintiffs reallege and incorporate herein by reference each of the

23   preceding paragraphs of this complaint, and any subsequent paragraphs.

24     136. The present claim for relief is brought pursuant to Cal. Gov. Code §§

25   815.2 and 820. Under Section 820 of the Government Code, as public employees,

26   Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or

27   omissions to the same extent as private persons. Under Section 815.2 of the

28   Government Code, as public entities, Defendants COUNTY and SBSD are liable for

injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendants COUNTY and SBSD, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

137.   At all times, Defendants DOES 1 through 10 owed Plaintiff and Decedent ADAM PRESTON ADAMS the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

138.   At all times, these Defendants owed Plaintiff and Decedent ADAM PRESTON ADAMS the duty to act with reasonable care.

139.   These general duties of reasonable care and due care owed to Plaintiff and Decedent ADAM PRESTON ADAMS by these Defendants include but are not limited to the following specific obligations:

a.   To properly take precautions in housing and confining an inmate who is being attacked by another inmate;

b.   To house and confine inmates in a housing module, cell and facility free violence;

c.   To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

d.   To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs;

e.   To summon, or transport Decedent to necessary and appropriate emergency medical and mental health care

f.   To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

g.   To refrain from abusing their authority granted them by law; and

h.   To refrain from violating Plaintiff's and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and

1 as otherwise protected by law.

2 140. Defendants DOES 1 through 10, through their acts and omissions,

3 breached each and every one of the aforementioned duties owed to Plaintiff and

4 Decedent ADAM PRESTON ADAMS .

5 141. Defendants COUNTY and SBSD are vicariously liable for the violations

6 of state law and conduct of their officers, deputies, employees, and agents, including

7 individual named defendants, under California Government Code § 815.2.

8 142. As a direct and proximate result of these Defendants' negligence, Plaintiff

9 and Decedent ADAM PRESTON ADAMS sustained injuries and damages, and against

10 each and every Defendant named in this claim for relief in their individual capacities

11 are entitled to relief, including punitive damages against such individual Defendants.

12 ## EIGHTH CLAIM FOR RELIEF

13 ### Negligence – Medical Malpractice

14 **(Plaintiff ESTATE OF ADAM PRESTON ADAMSAs Against All Defendants)**

15 143. Plaintiffs reallege and incorporate herein by reference each of the

16 preceding paragraphs of this complaint, and any subsequent paragraphs.

17 144. The present claim for relief is brought pursuant to Cal. Gov. Code §§

18 815.2 and 820. Under Section 820 of the Government Code, as public employees,

19 Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or

20 omissions to the same extent as private persons. Under Section 815.2 of the

21 Government Code, as public entities, Defendants COUNTY and SBSD are liable for

22 injuries caused by the acts or omissions of their employees committed within the course

23 and scope of their employment. This cause of action is not alleging direct liability

24 against Defendants COUNTY and SBSD, only vicarious liability. *See* Gov. Code, §

25 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

26 145. Decedent ADAM PRESTON ADAMS was under the care and treatment

27 of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned

28 to the COUNTY Jails, including WVDC, who were required to examine, treat, monitor,

prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and SBSD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent ADAM PRESTON ADAMS to specialist medical care providers; negligently failed to provide physician care; negligently failed to provide psychiatry care; carelessly failed to detect, monitor, and follow-up with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee ADAM PRESTON ADAMS .

146.   Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails failed to properly monitor ADAM PRESTON ADAMS knowing that he was arrested for a minor misdemeanor and was being housed with a known violent inmate.

147.   It was more than evident on about May 21, 2023, that ADAM PRESTON ADAMS' situation was dire after the beating he endured, and he needed immediate life-saving medical care. Instead of providing the appropriate medical care, Defendants DOES 1 through 10, and each of them, failed to take reasonable actions to summon medical care to a severely injured ADAM PRESTON ADAMS.

148.   Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide Decedent ADAM PRESTON ADAMS' emergency medical and mental health care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for Decedent ADAM PRESTON ADAMS was provided.

149.   As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Decedent sustained injuries and damages that cost

1  him his life, and Plaintiff and Decedent are entitled to compensatory damages and as

2  applicable to this claim for Medical Negligence, to be proven at time of trial.

3      150.   Defendants COUNTY and SBSD are vicariously liable for the violations

4  of state law and conduct of their officers, deputies, employees, and agents, including

5  individual named defendants, under California Government Code § 815.2.

6                       **NINTH CLAIM FOR RELIEF**

7               **Violation of California Government Code § 845.6**

8  **(Plaintiff ESTATE OF ADAM PRESTON ADAMS As Against All Defendants)**

9      151.   Plaintiffs reallege and incorporate herein by reference each of the

10 preceding paragraphs of this complaint, and any subsequent paragraphs.

11     152.  Defendants DOES 1 through 10 knew ADAM PRESTON ADAMS

12 needed immediate medical care and treatment following the life-threatening beating he

13 endured at the hand of his cellmate on or about May 21, 2023, and each failed to take

14 reasonable action to summon immediate medical care and treatment. Each such

15 individual defendant, employed by and acting within the course and scope of his/her

16 employment with Defendants COUNTY and SBSD, knowing and/or having reason to

17 know of Decedent ADAM PRESTON ADAMS' need for immediate medical care and

18 treatment, failed to take reasonable action to summon such care and treatment in

19 violation of California Government Code § 845.6.

20     153.   In fact, it was more than evident on or about May 21, 2023, that ADAM

21 PRESTON ADAMS' situation was dire, and he needed immediate medical care.

22 ADAM PRESTON ADAMS needed immediate care to address his life-threatening

23 injuries following the beaten he was subjected to after being housed with a known

24 violent inmate. Instead of providing the appropriate medical care, Defendants DOES 1

25 through 10, and each of them, failed to take reasonable actions to summon medical

26 care.

27

28

154.   Defendants COUNTY and SBSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

155.   As a direct and proximate result of the aforementioned acts of these Defendants, Decedent ADAM PRESTON ADAMS lost his life as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Decedent lost his life and Plaintiff and Decedent are entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

## TENTH CLAIM FOR RELIEF

### Violation of California Civil Code § 52.1

### (Tom Bane Act)

### (Plaintiff ESTATE OF ADAM PRESTON ADAMS As Against All Defendants)

156.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

157.   The present claim for relief is brought pursuant to Civil Code § 52.1, Cal. Gov. Code §§ 815.2 and 820. Under Section 820 of the Government Code, as public employees, Defendants DOES 1-10, inclusive, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2 of the Government Code, as public entities, Defendants COUNTY and SBSD are liable for injuries caused by the acts or omissions of their employees committed within the course and scope of their employment. This cause of action is not alleging direct liability against Defendants COUNTY and SBSD, only vicarious liability. *See* Gov. Code, § 815.2, subds. (a), (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

158.   Plaintiff brings the claims in this claim for relief as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq.*

159.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while Decedent ADAM PRESTON

ADAMS was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated ADAM PRESTON ADAMS' rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

    a.    The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's safety, protection, and serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

    b.    The right for the familial association to be free from government interference as secured by the Fourteenth Amendment to the United States Constitution;

    c.    The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

    d.    The right to emergency medical and mental health care as required by California Government Code §845.6.

    e.    The right to be free from bodily harm.

160.    Defendants' violations of decedent ADAM PRESTON ADAMS' due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[1] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of ADAM PRESTON ADAMS' rights as described above, Defendants violated ADAM PRESTON ADAMS' rights by the following conduct constituting threat, intimidation, or coercion:

---

[1] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.,* 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

a.    With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

b.    With deliberate indifference to the safety of pretrial detainees;

c.    With deliberate indifference to Decedent's serious medical and mental health needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

d.    Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to County of San Bernardino's jail detainees and inmates;

e.    Requiring medical and mental health staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

f.    Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

161.   The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent ADAM PRESTON ADAMS' rights, or to any legitimate and lawful jail or law enforcement activity.

162.   Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

163.   Further, each Defendant violated decedent ADAM PRESTON ADAMS' rights with reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

///

**COMPLAINT FOR DAMAGES**

164.   Defendant COUNTY and SBSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

165.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent ADAM PRESTON ADAMS' rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties

## **REQUEST FOR RELIEF**

Wherefore, Plaintiffs ESTATE OF ADAM PRESTON ADAMS and JENNIFER QUINTERO respectfully requests that the Court enter a judgment as follows:

A.   Wrongful death of ADAM PRESTON ADAMS, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.   ADAM PRESTON ADAMS' coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.   Violation of ADAM PRESTON ADAMS' constitutional rights, pursuant to Cal.
Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.   ADAM PRESTON ADAMS' loss of life, pursuant to federal civil rights law;

F.   ADAM PRESTON ADAMS' conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

///

**COMPLAINT FOR DAMAGES**

G.   General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.   Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.   Punitive damages as to individual defendants;

J.   Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.   A multiplier of damages, including treble damages, under the Tom Bane Act;

L.   Penalties under the Tom Bane Act;

M.   Interest; and

N.   All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law.

Dated: July 12, 2024         **LAW OFFICES OF CHRISTIAN CONTRERAS**
                              **A PROFESSIONAL LAW CORPORATION**

                              By: _____
                              Christian Contreras, Esq.
                              Edwin S. Salguero, Esq.
                              Attorneys for Plaintiff,
                              ESTATE OF ADAM PRESTON ADAMS, et al.

Dated: July 12, 2024         **GASTÉLUM LAW, APC**

                              By: _____
                              Denisse O. Gastélum, Esq.
                              Attorneys for Plaintiff,
                              ESTATE OF ADAM PRESTON ADAMS, et al

## DEMAND FOR JURY TRIAL

Plaintiffs ESTATE OF ADAM PRESTON ADAMS and JENNIFER QUINTERO hereby makes a demand for a jury trial in this action.

Dated: July 12, 2024

LAW OFFICES OF CHRISTIAN CONTRERAS
A PROFESSIONAL LAW CORPORATION

By: _____
Christian Contreras, Esq.
Edwin S. Salguero, Esq.
Attorneys for Plaintiff,
ESTATE OF ADAM PRESTON ADAMS, et al.

Dated: July 12, 2024

GASTÉLUM LAW, APC

By: _____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiff,
ESTATE OF ADAM PRESTON ADAMS, et al.