Denisse O. Gastélum (SBN 282771)
**GASTÉLUM LAW**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, CA 90808
Tel: (213) 340-6112;
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Christian Contreras (SBN 330269)
**LAW OFFICES OF CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000; Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiffs,
ESTATE OF ADAM PRESTON ADAMS, *et al.*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ESTATE OF ADAM PRESTON ADAMS, by and through successor in interest, Jennifer Quintero; JENNIFER QUINTERO, individually,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO, a public entity; SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, a public entity; SHERIFF SHANNON D. DICUS, individually; MARCO ANTONIO LOPEZ-HERNANDEZ, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO.: 5:24-cv-01447-KK-(SHKx)**<br>*[Honorable Kenly Kiya Kato, Magistrate Judge, Shashi H. Kewlaramani]*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DATE:** November 14, 2024<br>**TIME:** 9:30 a.m.<br>**LOCATION:** United States Courthouse, George E. Brown, Jr. Federal Building 350, 470 12th St., Riverside, CA 92501, Courtroom 3,<br><br>**Action Filed:** April 12, 2024<br>**Trial Date:** TBD |

i

1  **TO THE HONORABLE COURT, DEFENDANTS, AND ALL OTHER**
2  **INTERESTED PARTIES:**

3     **COME NOW** Plaintiffs ESTATE OF ADAM PRESTON ADAMS, by and
4  through successor in interest, Jennifer Quintero; JENNIFER QUINTERO, individually
5  (hereinafter collectively "Plaintiffs") and hereby oppose Defendants County of San
6  Bernardino ("COSB"), San Bernardino County Sheriff's Department ("SBSD"), and
7  Sheriff Shannon D. Dicus ("Sheriff Dicus") (collectively, "County Defendants")'s
8  Motion to Dismiss Plaintiffs' Complaint.

9     This opposition is based on the memorandum of points and authorities attached
10 hereto, the pleadings and records on file with this Court, any declarations in support
11 thereof, any attached exhibits, and any matters of which the Court may take judicial
12 notice, and on such oral and documentary evidence as may be presented at the hearing of
13 this Motion, if any.

14 Dated: October 24, 2024         **LAW OFFICES OF CHRISTIAN CONTRERAS**
15                                 **A PROFESSIONAL LAW CORPORATION**
16                                 By: _____
17                                 Christian Contreras, Esq.
18                                 Attorneys for Plaintiffs,
                                   ESTATE OF ADAM PRESTON ADAMS, et al.
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.   LEGAL STANDARD ...........................................................................2

III.   STATEMENT OF FACTS ..................................................................3

IV.   ARGUMENT ...................................................................................10

    A. A Section 377.32 Declaration Is Not a Prerequisite to Filing or Continuing an Action ..........................................................................................10

    B. Sheriff Dicus Should not be Dissmissed Given that he is Being Sued in His Individual Capacity, Not Official Capacity .....................................................10

    C. The San Bernardino Sheriff's Department Should not be Dissmissed Because it is a Separate Suable Entity ...........................................................................11

    D. Plaintiffs' Have Pled Sufficient Facts to State a Claim for Municipal Liability under a Theory of Unconstitutional Customs and Practices ..............12

    E. Plaintiffs' Have Pled Sufficient Facts to State a Claim for Municipal Liability under a Theory of Failure to Train .....................................................14

    F. Plaintiffs' Have Pled Sufficient Facts to State a Claim for Supervisory Liability...................................................................................................16

    G. Plaintiffs' Have Pled Sufficient Facts to State a Claim for 7th Claim for Wrongful Death and 8th Claim for Medical Malpractice .................................17

    H. Plaintiffs' Have Pled Sufficient Facts to State a Claim for Failure To Summon Medical Care Pursuant To Cal. Gov. Code § 845.6 ..........................18

    I. Plaintiffs' Have Pled Sufficient Facts to State a Claim under the Bane Act.19

V.   IN THE EVENT THE COURT GRANTS THE MOTION TO DISMISS, PLAINTIFFS REQUEST LEAVE TO AMEND ..................................................21

VI.   CONCLUSION ..........................................................................21

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Ashcroft v. Iqbal,*
  (2009) 556 U.S. 662 ................................................................................2, 3

*Atayde v. Napa State Hosp.,*
  (E.D. Cal. Sept. 16, 2016) No. 1:16-cv-00398-DAD-SAB; 2016 U.S. Dist.
  LEXIS 126639 ..........................................................................................20

*Austin B. v. Escondido Union School Dist.,*
  (2007) 149 Cal.App.4th 860 ....................................................................19

*Bd. of the Cty. Comm'rs v. Brown,*
  (1997) 520 U.S. 397 ............................................................................13, 15

*Bell Atl. Corp. v. Twombly,*
  (2007) 550 U.S. 544 ..................................................................................2

*Benavidez v. Cnty. of San Diego,*
  (9th Cir. 2021) 993 F.3d 1134 ................................................................13

*Bryant v. Cnty. of Los Angeles,*
  (C.D. Cal. 2020) 2020 WL 8024857 ......................................................11

*Christie v. Iopa,*
  (9th Cir. 1999) 176 F.3d 1231 ................................................................13

*City of Canton v. Harris,*
  (1989) 489 U.S. 378 ............................................................................14, 15

*Connick v. Thompson,*
  (2011) 563 U.S. 51 ..................................................................................15

*Cornell v. City and County of San Francisco,*
  (2017) 17 Cal.App.5th 766 ................................................................19, 20

*Dang v. Cross,*
  (9th Cir. 2005) 422 F.3d 800 ..................................................................20

*DCD Programs, Ltd. v. Leighton,*
  (9th Cir. 1987) 833 F.2d 183 ..................................................................21

*Foman v. Davis,*
  (1962) 371 U.S. 178 ................................................................................21

*Gillette v. Delmore,*
  (9th Cir. 1992) 979 F.2d 1342 ................................................................13

*Gordon v. County of Orange,*
  (9th Cir. 2018) 888 F.3d 1118 ................................................................20

*Himaka v. Buddhist Churches of Am.,*
  (N.D. Cal. 1995) 917 F. Supp. 698 ........................................................12

*Hultman v. Cnty. of Ventura,*
  (C.D. Cal. 2021) 2021 WL 6618478 ......................................................11

*Hyde v. City of Willcox,*
  (9th Cir. 2022) 23 F.4th 863 ................................................................. 16

*Jackson v. Barnes,*
  (9th Cir. 2014) 749 F.3d 755 ................................................................. 12

*Karim-Panahi v. Los Angeles Police Dep't,*
  (9th Cir. 1988) 839 F.2d 621 ................................................................. 11

*Lattimore v. Dickey,*
  (2015) 239 Cal.App.4th 959 .................................................................. 17

*M.H. v. County of Alameda,*
  (N.D. Cal. 2013) 90 F.Supp.3d 889 ....................................................... 20

*M.S. v. County of Ventura,*
  (C.D. Cal. Mar. 7, 2017) 2017 U.S. Dist. LEXIS 230939 ..................... 20

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
  (9th Cir. 2008) 519 F.3d 1025 ................................................................. 2

*Monell v. Department of Social Servs.,*
  (1978) 436 U.S. 658 .............................................................. 12, 13, 14

*Moore v. Kayport Package Express, Inc.,*
  (9th Cir. 1989) 885 F.2d 531 ................................................................. 21

*Moss v. United States Secret Service,*
  (9th Cir. 2009) 572 F.3d 962 ................................................................... 2

*Neuroth v. Mendocino Cty.,*
  (N.D. Cal. Jan. 28, 2016) 2016 U.S. Dist. LEXIS 11109 ...................... 20

*Norgart v. Upjohn*
  (1999) 21 Cal.4th 383 ............................................................................ 17

*Page v. County of Madera,*
  (E.D. Cal. Dec. 2, 2017) 2017 U.S. Dist. LEXIS 199127 ...................... 20

*Papasan v. Allain,*
  (1986) 478 U.S. 265 ................................................................................. 2

*Parsons v. Tickner,*
  (1995) 31 Cal.App.4th 1513 ................................................................... 10

*Rivera v. Cnty. of Los Angeles,*
  (9th Cir. 2014) 745 F.3d 384 ................................................................. 12

*Sanders v. Yuba Cnty.,*
  (1967) 247 Cal. App. 2d 748 .................................................................. 19

*Shay v. Cnty. of Los Angeles,*
  (C.D. Cal. 2015) 2015 WL 6513632 ...................................................... 12

*Sprewell v. Golden State Warriors,*
  (9th Cir. 2001) 266 F.3d 979 ................................................................... 2

*Starr v. Baca,*
  (9th Cir. 2011) 652 F.3d 1202 .......................................................... 11, 16

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Steel v. Alameda Cnty. Sheriff's Off.*,
  (N.D. Cal. 2019) 428 F.Supp.3d 235..................................................................11
*Streit v. County of Los Angeles*,
  (9th Cir. 2001) 236 F.3d 552...........................................................................11
*Trevino v. Gates*,
  (9th Cir. 1996) 99 F.3d 911.............................................................................13
*United States v. Webb*,
  (9th Cir. 1981) 655 F.2d 977...........................................................................21
*Venegas v. County of Los Angeles*,
  (2004) 32 Cal.4th 820.......................................................................................19
*Watson v. State of California*,
  (1993) 21 Cal. App. 4th 836; 26 Cal. Rptr. 2d 262.........................................19

**STATUTES**

Cal. Code of Civil Procedure § 377.32 ..............................................................10
Cal. Government Code Section 844.6..................................................................18
Cal. Government Code Section 845.6..................................................................18
Cal. Government Code Section 855.6..................................................................18

**FEDERAL RULES**

Federal Rules of Civil Procedure Rule 12...................................................2, 12
Federal Rules of Civil Procedure Rule 15......................................................21
Title 42 U.S.C. § 1983 ...............................................................................12, 12

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is a civil rights case concerning the tragic death of ADAM PRESTON ADAMS on May 21, 2023. At the time of the attack, ADAM PRESTON ADAMS was a fifty-six-year-old, who suffered from mental health issues, including schizophrenia, leaving him vulnerable to violent inmates. On May 21, 2023, ADAM PRESTON ADAMS, a loving father to his daughter, was brutally and repeatedly beaten in his cell by his cellmate MARCO ANTONIO LOPEZ-HERNANDEZ.

Upon information and belief, MARCO ANTONIO LOPEZ-HERNANDEZ was known by the individual defendants to be aggressive and violent based on his violent history. It is believed that MARCO ANTONIO LOPEZ-HERNANDEZ was a known violent predator who preyed on the weak and the most vulnerable. Because of these traits, his mental/medical condition, and his tendency toward violence, each defendant herein knew, or should have known, that MARCO ANTONIO LOPEZ-HERNANDEZ posed an imminent threat of violence and harm to all other inmates in his immediate vicinity.

As further discussed below, Defendants' motion should be denied for the following reasons:

1. A Section 377.32 declaration is not a prerequisite to filing or continuing an action.

2. Sheriff Dicus should not be dismissed given that he is being sued in his individual capacity, not official capacity.

3. The San Bernardino Sheriff's Department should not be dismissed because it is a separate suable entity.

4. Plaintiffs' have pled sufficient facts to state a claim for municipal liability under a theory of unconstitutional customs and practices.

5. Plaintiffs' have pled sufficient facts to state a claim for municipal liability under a theory of failure to train.

6. Plaintiffs' have pled sufficient facts to state a claim for supervisory liability.

7. Plaintiffs' have pled sufficient facts to state a claim for 7th claim for wrongful death and 8th claim for medical malpractice.

8. Plaintiffs' have pled sufficient facts to state a claim for failure to summon medical care pursuant to Cal. Gov. Code § 845.6.

9. Plaintiffs' have pled sufficient facts to state a claim under the Bane Act.

Accordingly, Defendants' motion should be denied. In any event, leave to amend should be granted.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The pleading must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see also Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III.    STATEMENT OF FACTS

As alleged in Paragraphs 25-51 in Plaintiff's Complaint:

99.    On or about May 11, 2023, ADAM PRESTON ADAMS was taken into the custody of the SAN BERNARDINO SHERRIFF'S DEPARTMENT for a non-violent misdemeanor offense and was housed in West Valley Detention Center (hereinafter "WVDC"), located at 9500 Etiwanda Ave, Rancho Cucamonga, California 91739.

100.    On or about May 21, 2023, ADAM PRESTON ADAMS was brutally attacked and beaten by his cellmate MARCO ANTONIO LOPEZ-HERNANDEZ while housed at WVDC, resulting in ADAMS's death. ADAM PRESTON ADAMS was fifty-six (56) years old at the time of his death.

101.    Upon information and belief, SBSD deputies and/or custody staff were well aware of ADAM PRESTON ADAMS' mental health conditions which created the very environment for a violent encounter to result with another inmate. Despite this knowledge, SBSD personnel failed to take adequate precautions to protect ADAM PRESTON ADAMS.

102.    Furthermore, upon information and belief, SBSD deputies and/or custody staff were aware of the propensity for the danger posed by ADAM PRESTON ADAMS' cellmate, MARCO ANTONIO LOPEZ-HERNANDEZ, and failed to properly classify his cellmate.

103.    Upon information and belief, SBSD deputies and mental health staff were aware of MARCO ANTONIO LOPEZ-HERNANDEZ's violent history, tendencies, and propensities for violence based on their interviews and evaluations of MARCO ANTONIO LOPEZ-HERNANDEZ and review of his medical and penal records. SBSD deputies and mental health staff knew or should have known that MARCO

1   ANTONIO LOPEZ-HERNANDEZ would attack or otherwise and/or kill other

2   inmates if MARCO ANTONIO LOPEZ-HERNANDEZ was not consistently

3   monitored.

4       104.   Nevertheless, SBSD deputies and/or custody staff intentionally and

5   improperly housed ADAM PRESTON ADAMS with this dangerous individual,

6   thereby placing him at substantial risk of death or serious harm.

7       105.   By housing ADAM PRESTON ADAMS with a dangerous individual,

8   despite ADAM PRESTON ADAMS being in custody for a non-violent misdemeanor

9   offense, SBSD personnel showed a deliberate indifference to his safety. This

10  indifference ultimately led to ADAM PRESTON ADAMS being brutally killed by his

11  cellmate.

12      106.   Moreover, it was foreseeably dangerous to house ADAM PRESTON

13  ADAMS with MARCO ANTONIO LOPEZ-HERNANDEZ, who upon information

14  and belief, had a violent background. Given ADAM PRESTON ADAMS' mental

15  health history, there was a significant risk of an in-cell altercation, which could likely

16  result in ADAM PRESTON ADAMS' murder due to his cellmate's violent tendencies

17      107.   Long before the attack on ADAM PRESTON ADAMS, SBSD personnel

18  were aware that at the WVDC, there existed a great indifference to the safety and

19  protection of inmates, particularly vulnerable inmates such as ADAM PRESTON

20  ADAMS. This indifference was characterized by a total disregard for the well-being of

21  inmates who were susceptible to being preyed upon by violent, predatory inmates.

22      108.   Despite a long history of inmate-on-inmate violence, SBSD personnel

23  deliberately failed to take even modest actions to prevent predatory behavior among

24  inmates. As a result, by the time ADAM PRESTON ADAMS was taken into custody

25  and housed at WVDC, violent inmates knew they could continue to prey on the most

26  vulnerable without interference from custodial staff or medical/mental health staff.

27      109.   Defendants placed ADAM PRESTON ADAMS in a position of

28  vulnerability and danger from his cellmate because Defendants were on notice of his

cellmate's propensity for violence that foreseeably manifested when his cellmate violently attacked ADAM PRESTON ADAMS and repeatedly beat ADAM PRESTON ADAMS. Defendants failed to take any reasonable steps to mitigate the obvious and well-known risk of harm, including this inmate-on-inmate violence to ADAM PRESTON ADAMS, that was attendant to housing ADAM PRESTON ADAMS with a cellmate who was dangerous and prone to violence.

110.   Furthermore, upon information and belief, due to the COUNTY Jails patterns and practices of not conducting proper and timely Title 15 welfare and safety checks, ADAM PRESTON ADAMS' dire need for emergency intervention went unnoticed by the WVDC staff and deputies, who were responsible for monitoring and ensuring the welfare of all inmates, including ADAM PRESTON ADAMS.

111.   Defendants also knew that deputies routinely failed to conduct required Title 15 welfare and safety checks in WVDC and failed to take sufficient actions to correct this problem and ensure that necessary checks were performed.

112.   Upon information and belief, Defendants DOES 1 through 10, including the custodial and mental health staff of SBSD's correctional facility at WVDC, their collective failure to conduct the required safety check of Decedent ADAM PRESTON ADAMS' housing unit on the date of the violent attack, evidences deliberate indifference to the risk of harm to ADAM PRESTON ADAMS.

113.   By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide ADAM PRESTON ADAMS with safety and proper housing, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide proper Title 15 welfare and safety checks, along with emergency medical care and life-saving care to persons in their custody, constituted deliberate indifference to ADAM PRESTON ADAMS' serious medical needs, health, and safety.

114.   DOES 1 through 10, which included custodial and mental health staff of WVDC, acted with deliberate indifference and reckless disregard to the safety, security, protection and constitutional and statutory rights of Decedent and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things:

a.    Selecting, retaining and assigning deputies to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates who exhibit vulnerabilities due to medical, mental health, and disabilities;

b.    Subjecting persons in their jails to violence perpetrated by other detainees, arrestees or inmates;

c.    Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following: separation of detainees and arrestees from potentially violent or dangerous inmates; use of security cameras to monitor violence within jail cells; training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence; monitoring drunken detainees who are unable to care for themselves.

d.    Failing to adequately train, supervise, and control deputies in the arts of law enforcement;

e.    Failing to adequately discipline deputies involved in misconduct; and

f.    Condoning and encouraging deputies in the belief that they can violate the rights of persons such as the Plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

115.   Defendant DOES 1 through 10, which included custodial and mental

6

health staff of WVDC acted with deliberate indifference and reckless disregard toward ADAM PRESTON ADAMS' right to be protected and safe while housed at the WVDC, and afforded due process of law, by among other things, the following acts:

    a.   Placing ADAM PRESTON ADAMS, a vulnerable detainee with mental health concerns, in a cell with an inmate and/or arrestees whom Defendants knew or should have known had propensities for aggressive acts or acts of violence and mental instabilities, and not watching and protecting him;

    b.   Failing to properly classify and house his cellmate as a violent inmate or otherwise house and classify his cellmate in appropriate housing where he could be constantly monitored and/or isolated from other inmates;

    c.   Placing ADAM PRESTON ADAMS, a vulnerable detainee with mental health concerns, in a cell with other detainees, arrestees and inmates under circumstances that were conducive to the eruption of violence, including in a unit with other violent and dangerous inmates such as the one housed with ADAM PRESTON ADAMS;

    d.   Causing ADAM PRESTON ADAMS, to remain in the cell with another  inmate after Defendants knew that physical violence was imminent; and

    e.   Not observing or protecting ADAM PRESTON ADAMS, or otherwise standing by and allowing a brutal beating on ADAM PRESTON ADAMS by another inmate to continue for an unreasonable period of time, resulting in unnecessary and severe critical injuries to ADAM PRESTON ADAMS that eventually caused his death on May 21, 2023.

116.   Plaintiff are informed and believe that Defendants DOES 1 through 10 were aware of the threat by his cellmate represented to ADAM PRESTON ADAMS, based on the inmate's criminal history or exhibited violent tendencies of which the

deputies and other employees knew or should have known. Said defendants intentionally, recklessly and with deliberate indifference, failed to take any security measures to protect detainees and arrestees of minor offenses who were unable to defend themselves, such as ADAM PRESTON ADAMS, who was unable to care for himself or others from inmates with violent tendencies like those exhibited by his cellmate, MARCO ANTONIO LOPEZ-HERNANDEZ.

117.   Plaintiff are informed and believe and thereupon allege, that defendants COUNTY and SBSD ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices and customs set forth in the preceding paragraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations, based either on a deliberate plan by defendants, or on defendants' deliberate indifference or reckless disregard to the safety, security and constitutional and statutory rights of Plaintiff.

118.   Plaintiff are informed and believe and thereupon allege that the brutal beating on ADAM PRESTON ADAMS was conducted with the approval of SBSD deputies or because of the deliberate indifference or reckless disregard of Deputy Defendants, and DOES 1 through 10 to the safety and security of ADAM PRESTON ADAMS.

119.   Plaintiff are informed and believe and thereupon allege that the Deputy Defendants and DOES 1 through 10, recklessly and with deliberate indifference, failed to immediately and appropriately respond to the brutal attack, and allowed the attack to continue for an extended period of time causing ADAM PRESTON ADAMS to suffer numerous and severe injuries, resulting in his death.

120.   Plaintiff are informed and believe that SBSD deputies, intentionally, recklessly and with deliberate indifference, failed to take immediate action to summon medical care for ADAM PRESTON ADAMS, despite knowing he was in need of immediate medical care.

121.   Defendants have been on notice for years that their provision of medical

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    and mental health treatment to inmates is inadequate and results in needless harm and
2    death.

3        122.   Welfare and safety checks by custody and mental health staff, when done
4    correctly, are an important part of protecting inmates in the SBSD's jails from harm,
5    including inmate on inmate violence. Defendants knew that health and welfare checks
6    conducted in units were part of violence prevention programs and that such checks
7    were necessary for inmate-on-inmate attack prevention.

8        123.   Prior to the attack of ADAM PRESTON ADAMS, Defendants were
9    aware that there was a problem with custody staff failing to actually perform required
10   welfare and safety checks in the units at SBSD jails, failing to perform adequate welfare
11   and safety checks and/or failing to take adequate measures after observing violence
12   during the welfare and safety checks.

13       124.   Defendants actions and omissions, as herein above recited, directly placed
14   ADAM PRESTON ADAMS at substantial risk of the grievous and tragic harm that
15   ultimately occurred.

16       125.  Defendants  COUNTY  OF  SAN  BERNARDINO  and  the  SAN
17   BERNARDINO  COUNTY  SHERIFF'S  DEPARTMENT  custodial  and  medical
18   personnel assigned to its correctional facilities have a responsibility to ensure that the
19   COUNTY correctional facilities are safe and that the constitutional rights of detainees
20   such as ADAM PRESTON ADAMS are not violated. The COUNTY OF SAN
21   BERNARDINO, SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT and
22   SHERIFF SHANNON D. DICUS have failed to ensure detainees do not get assaulted
23   in their jails and have failed to protect the civil rights and constitutional rights of
24   detainees within the COUNTY and SBSD jails. Accordingly, this claim and the
25   subsequent lawsuit will seek judicial intervention to ensure further constitutional
26   violations and jail assaults do not occur.

27   ///

28   ///

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# IV.    ARGUMENT

## A. A Section 377.32 Declaration Is Not a Prerequisite to Filing or Continuing an Action

Code of Civil Procedure section 377.32 requires the "person who seeks to commence an action or proceeding or to continue a pending action or proceeding as the Decedent's successor in interest" to file an affidavit stating, among other things, that "'[n]o proceeding is now pending in California for administration of the Decedent's estate'" and "[i]f the Decedent's estate was administered, a copy of the final order showing the distribution of the Decedent's cause of action to the successor in interest." "This provision does not require that the affidavit be filed as a condition precedent to commencing or continuing the action and thus, a section 377.32 declaration is not a prerequisite to filing or continuing an action." *Parsons v. Tickner* (1995) 31 Cal.App.4th 1513, 1524.

Here, there is no requirement that Plaintiffs file an affidavit as a condition precedent to commencing or continuing the action. In any event, Plaintiffs can file a declaration.

## B. Sheriff Dicus Should not be Dismissed Given that he is Being Sued in His Individual Capacity, Not Official Capacity

Defendants' contention regarding Defendant SHERIFF DICUS being used in his "official capacity" is puzzling given that Plaintiff is not suing Defendant SHERIFF DICUS in his official capacity. Indeed, Defendant SHERIFF DICUS is not mentioned in the complaint once. In fact, the complaint clearly alleges that Defendant SHERIFF DICUS is being sued in his individual capacity. *See* Comp. ¶ 16, L. 15-16 (Defendant DICUS is being sued in his individual capacities).

With respect to Plaintiff's Sixth Claim, Defendant SHERIFF DICUS is being sued under a supervisory liability claim. Under such claim, SHERIFF DICUS can be held liable in his individual capacity under § 1983 only if (1) the supervisor personally participated in the constitutional violation, or (2) there is a "sufficient causal connection

between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Again, Plaintiff is not suing Defendant SHERIFF DICUS is his official capacity, merely his individual capacity.

With respect to the balance of the claims at issue, 7-10, Defendant SHERIFF DICUS is being sued individually for his own conduct which led to violations of state law.

**C. The San Bernardino Sheriff's Department Should not be Dismissed Because it is a Separate Suable Entity**

The Ninth Circuit has held that California law permits § 1983 claims against municipal police departments. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 n. 2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.). Indeed, the Ninth Circuit affirmed this principle in *Streit v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001), and case law following *Streit*. *Streit* was based on a motion to dismiss wherein one of the principle issues was whether the Los Angeles Sheriff's Department was acting on behalf of the State or the County of Los Angeles. *Streit* has been consistently and continuously relied upon by various federal courts in California, including the Central District, when holding that police and sheriff departments in California are "separately suable entities."

Indeed, as recent as 2021, the Central District rejected attempts by defendants to dismiss claims against its police department or sheriff's department on identical grounds as those addressed in Defendant's Motion to Dismiss. *See e.g., Hultman v. Cnty. of Ventura,* 2021 WL 6618478, *2-3 (C.D. Cal. 2021) (rejecting defendants' argument that claims against the Ventura County Sheriff's Office were "duplicative" of claims against the County of Ventura); *Steel v. Alameda Cnty. Sheriff's Off.*, 428 F.Supp.3d 235, 241 (N.D. Cal. 2019) ("Many cases . . . have allowed a Section 1983 suit to proceed against a sheriff's department and its county."); *Bryant v. Cnty. of Los Angeles*, 2020 WL 8024857, *3 (C.D. Cal. 2020) (concluding "that LASD is a 'person'

within the meaning of 42 U.S.C. § 1983, and thus is subject to suit under that statute");
*Shay v. Cnty. of Los Angeles,* 2015 WL 6513632, *5 (C.D. Cal. 2015) (collecting
cases). The Ninth Circuit has also continued to apply *Streit. See Jackson v. Barnes,* 749
F.3d 755, 764 & n. 4 (9th Cir. 2014) (collecting cases in which the Ninth Circuit has
held that a county sheriff's department or a sheriff acting in an official capacity can be
sued under 42 U.S.C. § 1983); *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 389 (9th
Cir. 2014) (noting that "municipalities, including counties and their sheriff's
departments, can [] be liable under § 1983" if they satisfy *Monell's* requirements).

Furthermore, Defendants are moving for relief under Fed. R. Civ. Proc. Rule
12(b)(6). "The question presented by a motion to dismiss is not whether a plaintiff will
prevail in the action, but whether she is entitled to offer evidence in support of her
claim." *Himaka v. Buddhist Churches of Am*., 917 F. Supp. 698, 707 (N.D. Cal. 1995).

Here, Defendant SBSD is not merely a department of Defendant COSB,
Defendant SBSD is a separate suable entity which has a different basis for liability
pursuant to *Monell* different than Defendant COSB. Indeed, there are specific policies
which exist within Defendant SBSD which do not exist with Defendant COSB and vice
versa.

## D. Plaintiffs' Have Pled Sufficient Facts to State a Claim for Municipal Liability under a Theory of Unconstitutional Customs and Practices

In *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), the Supreme
Court held that municipalities were "persons" under § 1983 and thus could be held
liable for causing a constitutional deprivation. *Id*. at 690. The Court explained that
while a municipality may not be held liable under § 1983 for the torts of its employees
on a theory of respondent superior, liability may attach where the municipality itself
causes the constitutional violation through the execution of an official policy, practice
or custom. *Id*. at 690–691.

Absent a formal governmental policy, a Plaintiff must show a "longstanding
practice or custom which constitutes the standard operating procedure of the local

government entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell v. Dept. of Soc. Serv. of N.Y.*, 436 U.S. 658, 691 (1978).

Here, Plaintiff has alleged several policies which were so "persistent and widespread" that it constitutes a "permanent and well settled city policy." Plaintiff alleged at least seven different customs and practices which were widespread and longstanding which caused ADAM PRESTON ADAMS' death.

In terms of widespread and longstanding customs and practices, while the Ninth Circuit has explained that "[a] single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom[,]" courts have also noted that "[i]t is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim." *See Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Indeed, the Ninth Circuit has held, "[s]ingle acts may trigger municipal liability where 'fault and causation' were clearly traceable to a municipality's legislative body or some other authorized decisionmaker[.]" *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). (quoting *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 406 (1997)).

Nevertheless, Plaintiff alleged sufficient fact to establish a continuous and consistent that they have become a traditional method of carrying out policy. Indeed, as alleged in Paragraph 99-102:

99.    As a preamble, between 2018 and 2023, the COUNTY had notice of a slew of cases revealing constitutional violations of inmates' rights to be protected from harm. Due diligence would have revealed these breaches of constitutional mandates:

100.    In 2023, Defendant SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails resulted in twenty-six (26) in-custody deaths.

101.    The Defendants' deliberate indifference towards pretrial detainees subject to inmate violence due to the above-referenced polices, customs and practices resulted

in several inmate-on-inmate deaths since 2018. From June 2018 through March 2023, six (6) inmates have died due to inmate-on-inmate violence within the COUNTY jails:

    i.    In 2023, a woman, age 35, died of an inmate on intimate violence.

    ii.    In 2021, a male, age 58, died of an inmate on intimate violence.

    iii.    In 2021, a male, age 39, died of an inmate on intimate violence.

    iv.    In 2020, a male, age 58, died of an inmate on intimate violence.

    v.    In 2019, a male, age 62, died of an inmate on intimate violence.

    vi.    In 2018, a male, age 25, died of inmate on intimate violence.

102.   As demonstrated by the twenty-six (26) in-custody deaths in 2023, and the six (6) inmates which died by due to inmate-on-inmate violence within the COUNTY jails, it is more than evident that the policies, customs and practices referenced above were widespread and longstanding within the COUNTY and SBSD.

Therefore, Plaintiff has pled sufficient facts to establish municipal liability.

**E. Plaintiffs' Have Pled Sufficient Facts to State a Claim for Municipal Liability under a Theory of Failure to Train**

In *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation. *Id.* at 690. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of respondent superior, liability may attach where the municipality itself causes the constitutional violation through the execution of an official policy, practice or custom. *Id.* at 690–691.

As to a municipality, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "[A] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level

of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, as reflected in Paragraphs 110-123, Plaintiffs have pled sufficient facts to establish a claim for failure to train. Indeed, COUNTY and SBSD failed to trained its deputies and employees to such an unconstitutional degree that it resulted in a significant number of deaths based upon COUNTY and SBSD lacking the necessary training. Between 2018 and 2023, the COUNTY had reflected the lack of training. *See* Paragraph 117. It is clear from the facts in this case and the allegations that Defendants COUNTY and SBSD made a decision to not train their employees, including the defendant deputies. Therefore, Plaintiffs have pled sufficient facts.

Furthermore, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cnty. Cmm'rs v. Brown*, 520 U.S. 397, 409 (1997)). However, such a pattern is not always necessary: "it may happen that in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). For example, in light of the "moral certainty" that police officers will be armed and confronted by fleeing felons, the failure to train police officers on the "constitutional limits on the use of deadly force could reflect the city's deliberate indifference to [a] 'highly predictable consequence.'" *Connick*, 563 U.S. at 63–64; *Canton*, 489 U.S. at 390 n.10.

Here, when reading the allegations as a whole, it is obvious that the defendant deputies in this case needed different training concerning how they dealt with ADAM PRESTON ADAMS. Indeed, the degree of the deputies' training was so obviously inadequate given how there were systemic failures throughout the entire contact with ADAM PRESTON ADAMS.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Furthermore, Plaintiff has also alleged that "[i]n 2023, Defendant SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails resulted in twenty-six (26) in-custody deaths. The Defendants' deliberate indifference towards pretrial detainees subject to inmate violence due to the above-referenced polices, customs and practices resulted in several inmate-on-inmate deaths since 2018. From June 2018 through March 2023, six (6) inmates have died by due to inmate-on-inmate violence within the COUNTY jails. *See* Paragraphs 118-119.

Accordingly, Plaintiffs have pled sufficient facts to state a claim for failure to train.

## F. Plaintiffs' Have Pled Sufficient Facts to State a Claim for Supervisory Liability

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Indeed, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.*

Supervisors can be held liable for: "1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022).

Here, Paragraphs 125-134 of the complaint clearly allege how SHERIFF DICUS is liable under supervisory liability. Contrary to Defendants' assertion, a supervisor does not have to personally violate a person's right. A supervisor can be held liable under a number of theories including disregarding the known or obvious consequence

16

that a particular training deficiency or omission would cause his subordinates to violate

the plaintiff's constitutional rights, the supervisory defendant set in motion a series of

acts by subordinates, or knowingly refused to terminate a series of acts

by subordinates, that the supervisor knew or reasonably should have known would

cause the subordinates to deprive the plaintiff of these rights and an entire series of

theories. Put simply, a supervisory such as SHERIFF DICUS can be held liable for

systemic constitutional violations which deprive individual of their constitutional

rights which Plaintiff has sufficient alleged in the complaint.

### G. Plaintiffs' Have Pled Sufficient Facts to State a Claim for 7th Claim for Wrongful Death and 8th Claim for Medical Malpractice

The elements of wrongful death are "(1) a 'wrongful act or neglect' on the part

of one or more persons [(that is, negligence)] that (2) 'cause[s]' (3) the 'death of

[another] person.'" *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 390.

Furthermore, "[t]he elements of a cause of action for medical malpractice are:

(1) a duty to use such skill, prudence, and diligence as other members of the profession

commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal

connection between the negligent conduct and the injury; and (4) resulting loss or

damage." *Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968.

Here, Plaintiffs have pled more than sufficient facts to establish that the wrongful

acts and neglect of Defendants caused the death of ADAM PRESTON ADAMS. The

complaint clearly alleges that the ADAM PRESTON ADAMS was caused by

breaching the following duties of care:

    a.    To properly take precautions in housing and confining an inmate who is being attacked by another inmate;

    b.    To house and confine inmates in a housing module, cell and facility free violence;

    c.    To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

d.   To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical and mental health crisis with serious medical and mental health needs;

e.   To summon, or transport Decedent to necessary and appropriate emergency medical and mental health care

f.   To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY Jails;

g.   To refrain from abusing their authority granted them by law; and

h.   To refrain from violating Plaintiff's and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

*See* Paragraph 139.

Furthermore, Plaintiffs realleged the incorporated by reference the foregoing paragraphs which further establish how Defendants engaged in wrongful conduct and neglect which caused the death of ADAM PRESTON ADAMS.

Moreover, with respect to the purported immunities in California Government Code Sections 844.6, 845.6 and 855.6, such immunities are not applicable. First, Section 844.6(d) provided that "[n]othing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission." Here, Plaintiffs have alleged that Defendant COSB employees engaged in negligence and wrongful conduct. Further, in terms of Section 845.6, to the extent medical care was not provided, Defendants failed to timely medical care. Finally, in terms of Section 855.6, Plaintiffs are not alleging that their claims are based upon a failure to make physical or mental examination.

**H. Plaintiffs' Have Pled Sufficient Facts to State a Claim for Failure To Summon Medical Care Pursuant To Cal. Gov. Code § 845.6**

Government Code § 845.6 provides that "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the

employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care" and "where the public entity intentionally or unjustifiably fails to furnish immediate medical care." *Watson v. State of California*, 21 Cal. App. 4th 836, 841, 26 Cal. Rptr. 2d 262 (1993) (citations omitted). Such "liability is narrowly limited to the particular instances: (1) where the employee knows or has reason to know of the need (2) of immediate medical care and (3) fails to summon such care." *Id.* at 841-42 (quoting *Sanders v. Yuba Cnty.*, 247 Cal. App. 2d 748, 753 (1967)).

Here, as alleged in Paragraph 152-155 of the complaint, Defendants knew of the need of immediate medical care and failed to summon such care. Indeed, given that ADAM PRESTON ADAMS was violently attacked, ADAM PRESTON ADAMS needed immediate medical care but such care was not timely summoned.

## I. Plaintiffs' Have Pled Sufficient Facts to State a Claim under the Bane Act

The Bane Act makes it unlawful for any person to interfere by threat, intimidation, or coercion, or attempt to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual secured by the Constitution or laws of California. *See Austin B. v. Escondido Union School Dist.*, (2007) 149 Cal.App.4th 860, 881-883.

In *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766 (2017) (review denied), the Court of Appeal noted that the Bane Act has been "the source of much debate and confusion" in federal district courts, and "[w]e have endeavored to provide some clarity." *Id.* at 801. *Cornell* explained that the California Supreme Court "declined to place added restrictions on the scope of section 52.1" beyond its plain language (citing *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004)), and therefore, "[n]othing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Id.* at 800. Rather, coercion is shown where a defendant violated a constitutional right

with specific intent. *Id*. at 801-04. Whether defendants ***"understood they were acting unlawfully [is] not a requirement. Reckless disregard of the "right at issue" is all that [is] necessary***." *Id*., at 804 (emphasis added). Significantly, "reckless disregard" is also the standard for Plaintiff's deliberate indifference claims and punitive damages claims. *See Gordon v. County of Orange,* 888 F.3d 1118, 1125 (9th Cir. 2018)(deliberate indifference); *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (punitive damages).

*Cornell* also endorsed the holding in *M.H. v. County of Alameda*, 90 F.Supp.3d 889, 898 (N.D. Cal. 2013), that "deliberate indifference to a ***prisoner's serious medical needs***" fully satisfies the Bane Act. *Cornell* at 802, n. 31 (emphasis added). Several other courts have followed *M.H.'s* holding, including *Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) ("[t]he court finds the reasoning of the decision in M.H. to be more persuasive, adopts that analysis and ***finds that threats, coercion, and intimidation are <u>inherent</u> in a deliberate indifference claim***.") (emphasis added); *M.S. v. County of Ventura,* 2017 U.S. Dist. LEXIS 230939 at *73-75 (C.D. Cal. Mar. 7, 2017) (same); *Page v. County of Madera*, 2017 U.S. Dist. LEXIS 199127 at *10-11 (E.D. Cal. Dec. 2, 2017) (same); *Neuroth v. Mendocino Cty.,* 2016 U.S. Dist. LEXIS 11109, at *22 (N.D. Cal. Jan. 28, 2016) (Bane Act claim pled where Sheriff implemented policies, practices, and customs that led to the inmate's death due to jailor's deliberate indifference to serious medical/psychiatric needs).

Here, the complaint details the deliberate indifference shown Defendants and the custody/medical staff towards ADAM PRESTON ADAMS's situation and serous medical needs. There can be nothing more indifferent than jail staff ignoring an inmate whose will be subjected to harm and then also ignore their medical needs after being subjected to such harm.

Accordingly, Plaintiff's Bane Act is sufficiently pled, and the Court should deny Defendant's Motion to Dismiss as to this claim.

## V.   IN THE EVENT THE COURT GRANTS THE MOTION TO DISMISS, PLAINTIFFS REQUEST LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2) (emphasis added). In deciding whether justice requires granting leave to amend, factors to be considered include "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182,  (1962)) ("the *Foman* factors").

The Ninth Circuit has stressed Rule 15's policy of favoring amendments, and has applied such policy with liberality. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

Here, in the event this Court grants Defendants' motion to dismiss in part, or in whole, this Court should grant Plaintiffs leave to amend the Complaint because justice requires so.

## VI.   CONCLUSION

Based upon the foregoing, Defendants' motion should be denied. In any event, Plaintiffs seek leave to amend.

Dated: October 24, 2025

LAW OFFICES OF CHRISTIAN CONTRERAS
A PROFESSIONAL LAW CORPORATION

By: _____

Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF ADAM PRESTON ADAMS, et al.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1

## CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Plaintiff certifies that this brief contains

3  6,454 words, which complies with the word limit of L.R. 11-6.1.

4  Dated: October 24, 2025         **LAW OFFICES OF CHRISTIAN CONTRERAS**

5                                  **A PROFESSIONAL LAW CORPORATION**

6                            By:

7                                 Christian Contreras, Esq.

                                  Attorneys for Plaintiffs,

8                                 ESTATE OF ADAM PRESTON ADAMS, et al.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22